UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICTORIANO CARRILLO PABLO,<br>Petitioners,<br>v.<br>JULIO HERNANDEZ, *et al.*,<br>Respondents. | Case No. C26-02601-RSM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 |

This matter comes before the Court on Petitioner Victoriano Carrillo Pablo's Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. Dkt. #1. The Court has reviewed the certified petition, the responsive briefing filed by the Government, Dkts. #15-#17, a Reply and declarations, Dkts. #18-#21, and the remainder of the record. The following facts are taken from the verified petition, a declaration of a deportation officer submitted by the Government, and Petitioner's declaration. *See* Dkts. #1, #16, and #20.

Petitioner, a twenty-year-old citizen of Guatemala, entered the United States on May 31 4, 2021, as an unaccompanied minor. On June 4, 2021, Petitioner was detained by U.S. Border Patrol ("BP"), transported to the Tucson Coordination center, and processed as an Unaccompanied Noncitizen Child. The next day, BP placed him in immigration custody and served him with a Notice to Appear ("NTA") with an undetermined date, and this NTA was not

filed with the Executive Office for Immigration Review ("EOIR"). Petitioner was then transferred to a temporary shelter for unaccompanied minors and released on July 13, 2021, into the care of his uncle. Since his release, Petitioner has resided in Cottage Grove, Oregon.

On October 13, 2021, DHS cancelled Petitioner's June 5 NTA and issued him a new NTA, filed with EOIR the same day, scheduling him to appear before an immigration judge ("IJ") in Portland Immigration Court. On June 15, 2023, Petitioner appeared before an IJ with counsel for his master hearing, where DHS offered to dismiss his removal proceedings. The IJ dismissed Petitioner's case.

On September 11, 2023, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal, with the United States Citizenship and Immigration Services ("USCIS"), and this application remains pending.

On May 20, 2024, a Lane County Circuit Judge appointed Petitioner's uncle as his legal guardian and deemed Petitioner a vulnerable youth under that jurisdiction. On June 28, 2024, Petitioner filed a Form I-360, Petition for Amerasian, Widow(er), or Special Immigrant with Deferred Action, with USCIS. On September 16, 2024, USCIS approved his Form I-360, granting deferred action for a period of four years unless terminated by USCIS.

On March 3, 2026, Petitioner was arrested by Cottage Grove Police Department in Oregon based on accusations by a former intimate partner of committing sexual crimes. The Lane County District Attorney filed a criminal case on March 19, 2026, with the Circuit Court of the State of Oregon for Lane County and indicted Petitioner on March 24, 2026. This case remains pending, with a pre-trial conference scheduled for September 21, 2026. On March 27, 2026, Petitioner was released from custody on a security deposit.

On June 19, 2026, the Office of Enforcement and Removal Operations ("ERO") discovered Petitioner's arrest and pending charges. On June 22, 2026, USCIS terminated Petitioner's special immigration deferred action. On June 23, 2026, ERO issued a Form I-200, Warrant for Arrest of Noncitizen, for Petitioner. On July 20, 2026, Eugene ERO encountered Petitioner outside his vehicle and arrested him. Petitioner was then transported to Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he remains in detention. On July 22, 2026, ERO issued Petitioner a new NTA, scheduling him to appear before an IJ at Tacoma Immigration Court on August 20, 2026.

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioner contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*,

380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). The parties discuss how the application of the *Mathews* text applies here, and the Court will consider each *Mathews* factor in turn to determine whether Petitioner's arrest and detention comport with constitutional due process requirements. In so doing, the Court is mirroring the application of this test used by other judges in this District. *See, e.g., E.A. T.-B. v. Wamsley, et al.*, No. 25-1192-KKE, -- F. Supp. 3d --, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025). Similarly, the Court follows other decisions in this District by finding that Petitioner is detained under 8 U.S.C. § 1226(a), not § 1225(b) as the Government contends.

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioner was previously released, then detained without notice and placed in detention undoubtedly deprives him of an established interest in his liberty.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Court agrees with Petitioner that the risk of erroneous deprivation of his liberty in the absence of a pre-detention hearing is high under the

particular facts of this case.

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioner without a hearing. The Government clearly has an interest in detaining removable non-citizens under certain circumstances to the extent needed to ensure that they do not abscond or commit crimes. But under the facts here, the Government has failed to establish an interest in detaining Petitioner while providing little or no due process protections. *See E.A. T.-B.*, 795 F. Supp at 1322 ("even if Petitioner's arrest was not pretextual and was solely motivated by ICE's realization of his ATD violations, it would not necessarily follow that Petitioner can be detained for those violations without a hearing").

Based on this review of the *Mathews* factors, the Court finds that Petitioner has a protected liberty interest in his continued release from custody, and due process requires that Petitioner receive a hearing before an immigration judge before he can be re-detained.[1]

The Government contends that the "appropriate form of relief would be to require the Government to provide Petitioner with a bond hearing as he has not had one yet" to "allow for an immigration judge to assess Petitioner's risk of flight and dangerousness to the community." Dkt. #15 at 10 (citing cases). The Court is aware that other courts have granted post-deprivation bond hearings under similar circumstances. However, even in those cases where, unlike here, the petitioner received a bond hearing, they were then denied bond due to "mandatory detention" under Section 1225(b) with unfounded alternative findings of flight risk and/or allowing for release on bond. *See Quinonez Torres v. Hermosillo*, Case No. 2:26-cv-00076-TLF, 2026 WL 547591, at *10 (W.D. Wash. Feb. 23, 2026). Here, Petitioner was released from immigration

[1] Because Petitioner requests relief in the form of release from detention, and the Court finds that Petitioner's detention is in violation of his due process rights under the Constitution, the Court declines to make a determination on Petitioner's claims under the Administrative Procedure Act at this time.

custody years ago and has a pending Withholding of Removal application due to alleged death threats in his home country. On his pending charges, Petitioner was arrested and released on a security deposit by the Lane County court. That court is certainly most familiar with the circumstances of Petitioner's criminal case and, after evaluating him for potential flight risk or dangerousness, granted him release from custody. The declaration from Petitioner's criminal attorney in those proceedings states that he "has been in full compliance with all court orders and conditions of release." Dkt. #21 at ¶ 3. Obviously, this compliance has been frustrated by Petitioner's transfer from Oregon to Washington, and Petitioner indicates that he has already had to miss a hearing due to his transfer to and detention at NWIPC. Dkt. #20 at ¶ 8. The Government provides no showing of changes in circumstances to indicate a risk of flight or dangerousness or otherwise not already evaluated by the Oregon court or in the four months between his release from criminal custody and ICE's arrest and detention. Nor does the Government provide why, after learning of Petitioner's charges in June 2026, his arrest did not occur for over a month and why it occurred with little to no due process. Given the particular facts of this case, the Court agrees with Petitioner that "a post-deprivation bond hearing is an inadequate procedural safeguard because it would occur only after detention and thus fails to address an erroneous deprivation of liberty" and fails to see the purpose in yet another bond hearing to re-evaluate Petitioner's same risks due to his pending charges. *Chicoze-Ezechi v. Noem*, No. 2:26-cv-00145-BAT, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026). Accordingly, the Court finds that release is appropriate here and will grant the Petition.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS:

(1) Petitioner's habeas petition is GRANTED.

(2) Petitioner shall be released from custody immediately and may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate.

(3) Petitioner's immigration counsel shall be allowed to accompany him to any future immigration matters.

(4) If re-detained, Petitioner shall not be transferred out of district without the Court's approval.

(5) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and shall be noted under Local Rule 7(d)(3).

Dated this 14th day of August, 2026.

Ricardo S. Martinez
United States District Judge